UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AOIFE O'SHEA<br><br>　　Plaintiff<br><br>V.<br><br>FIRST UNUM LIFE INSURANCE COMPANY, UNUM GROUP, AND MCKINSEY & COMPANY, INC. PLAN<br><br>　　Defendants | CIVIL ACTION NO. |

**COMPLAINT**

1. Plaintiff, Aoife O'Shea ("Ms. O'Shea"), brings this action against the Defendants, First Unum Life Insurance Company, and Unum Group (together referred to as "Unum"), and McKinsey & Company, Inc. Plan ("Plan"), (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA").

2. Ms. O'Shea is filing this action to 1) recover long-term disability ("LTD") benefits due to her under the Plan; 2) enforce the present rights existing under the Plan; 3) clarify rights under the terms of the Plan and 4) recover damages, interest, costs, and attorney's fees.

3. Ms. O'Shea challenges the Defendants': 1) unreasonable and unlawful denial of her LTD benefits despite the substantial medical and vocational evidence demonstrating her qualification for said benefits; 2) pattern of rejecting and/or ignoring the evidence supporting Ms. O'Shea's disability in an effort to limit Defendants' financial exposure for Ms. O'Shea's claim; 3) failure to provide Ms. O'Shea with a full and fair review of her

claim for LTD benefits; and 4) failure to conduct a review of Ms. O'Shea's occupation; and 5) failure to provide a reasonable claims procedure that would yield a reasonable decision on the merits of Ms. O'Shea's LTD claim.

## PARTIES

4. Ms. O'Shea is a resident of Newton, Massachusetts. Ms. O'Shea is a vested participant in Defendants' employee benefit plan, within the meaning of 29 U.S.C. § 1002(2) (7). Ms. O'Shea has standing to bring this action under 29 U.S.C. § 1132(a).

5. The Defendant, First Unum Life Insurance Company, is a for-profit corporation with its principal place of business at 99 Park Avenue, New York, New York 10016. First Unum Life Insurance Company transacts business in Massachusetts and insures and underwrites the LTD plan under which Ms. O'Shea is suing. First Unum Life Insurance Company is both the party responsible for processing claims made under the Plan and making a final determination as to Plan participants' eligibility for benefits. At the time that Ms. O'Shea's benefits were denied, First Unum Life Insurance Company funded and administered the Plan.

6. The Defendant, Unum Group, is a for-profit corporation with its principal place of business at 1 Fountain Squire, Chattanooga, Tennessee 37402. Unum Group is the parent company of First Unum Life Insurance Company. Unum Group transacts business in Massachusetts and insures and underwrites the Plan under which Ms. O'Shea is suing. As the parent of First Unum Life Insurance Company, Unum Group is also the party responsible for both processing claims made under the Plan and making a final determination as to Plan participants' eligibility for disability benefits. At the time that Ms. O'Shea's benefits were denied, Unum Group funded and administered the Plan through First Unum Life Insurance

Company.

7. At all times, relevant to the claims asserted in this Complaint, Unum purported to act as ERISA claims fiduciaries with respect to participants of the Plan generally, and specifically with respect to Ms. O'Shea, within the meaning of ERISA.

8. The LTD plan under which Ms. O'Shea is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1). The Plan was issued to McKinsey Inc., contract # 451355.

## STATEMENT OF FACTS

**Relevant Plan Terms**

9. As an employee of McKinsey Inc. since December 2, 2019, Ms. O'Shea was eligible for LTD coverage under a contract of insurance with Unum.

10. The Plan is insured and administered by Unum.

11. The Plan provision defining disability states:

    "Disability" and "disabled" means that because of injury or sickness:

    1. You cannot perform each of the material duties of your regular occupation; or
    2. You, while unable to perform all of the material duties of your regular occupation on a full-time basis, are:
        a. Performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and
        b. Earning currently at least 20% less per month than your indexed pre-disability earnings due to that same sickness or injury.

12. The Plan provision defining "Sickness" states: "means illness or disease".

13. There is no Plan provision defining the term "material duties".

14. There is no Plan provision defining the term "regular occupation".

15. The Plan provision regarding benefit determinations states: "All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim".

16. Ms. O'Shea's functional limitations that result from her illnesses meet her burden of proving that she is unable to perform each of the material duties of her regular occupation.

17. Ms. O'Shea has met her burden of proving that she meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

18. Neither Unum nor the Plan has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

19. The Plan does not confer discretion on Unum to determine eligibility for benefits or to interpret the terms of the Plan.

**The Regulatory Settlement Agreement**

20. Unum's financial interest as the payor of Ms. O'Shea's benefits and the party responsible for determining her eligibility for benefits infected its decision to deny Ms. O'Shea's disability benefits and its handling of Ms. O'Shea's claim.

21. The United States District Court for the District of Massachusetts recently held in an ERISA long-term disability case "that Unum acted in bad faith, and not as a true fiduciary" concluding "Unum is demonstrably unable to exercise its discretion honestly and fairly." *Host v. First Unum Life Ins. Co.*, 569 F. Supp.3d 48, 59-60 (D. Mass. 2021).

22. On October 18, 2004, a Regulatory Settlement Agreement ("RSA") (attached at Exhibit A and incorporated by reference hereto) was entered into between Unum and the insurance regulators of 47 states as well as the United States Department of Labor.

23. The RSA was precipitated by investigations by Massachusetts insurance regulators and regulators of other states, which resulted in a Plan of Corrective Action.

24. The RSA obligated Unum to improve its claims handling practices to eliminate the biased denial and termination of disability claims.

25. The RSA was amended effective October 3, 2004 (Amendment attached at Exhibit B). The Amendment contains specific requirements by Unum to give significant weight to the conclusions of attending physicians made within their area of competence.

    Unum's agreement was articulated as follows:

    > Giving significant weight to an attending physician's ("AP") opinion, if the AP is properly licensed and the claimed medical condition falls within the AP's customary area of practice, unless the AP's opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record. In order for an AP's opinion to be rejected, the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.

26. Unum failed to adhere to the terms of the RSA when it reviewed Ms. O'Shea's claim.

27. Unum's failure to follow the mandate of the RSA is evidence of Unum's bad faith denial of Ms. O'Shea's claim.

**Ms. O'Shea's Claim for LTD Benefits**

28. On or about July 9, 2021, Ms. O'Shea stopped working due to significant symptoms from her tick-borne illnesses of Lyme Disease, Bartonella infection and Tick-Borne Relapsing Fever.

29. Due to her illnesses, Ms. O'Shea suffers from significant fatigue, widespread pain, nerve pain, severe headaches, numbness, and dizziness, amongst other symptoms.

30. Ms. O'Shea also suffers from Postural Orthostatic Tachycardia Syndrome ("POTS").

31. Ms. O'Shea's symptoms first manifested in January 2021, but she was not formally diagnosed until September 2021 with Lyme Disease and Bartonella Infection.

32. Ms. O'Shea was employed as a Learning Coordinator at McKinsey & Company, Inc.

33. Ms. O'Shea's occupation required her to travel.

34. Ms. O'Shea's occupation required her to relate and interact with others including peers, supervisors, and managers through virtual platforms and in-person for at least five (5) hours of her eight (8) hour workday.

35. Ms. O'Shea's occupation required unwavering attention to detail and an ability to navigate key computer-based programs, including those involving the analysis, creation, and presentation of visual data and graphics.

36. Ms. O'Shea attempted to work part-time from July 19, 2021 through August 13, 2021.

37. Due to her symptoms. Ms. O'Shea was not able to maintain even part-time work hours.

38. During the five (5) weeks Ms. O'Shea attempted part-time work, she had 81 sick hours out of the 135 hours required of a full-time employee.

39. Ms. O'Shea stopped working completely as of August 13, 2021.

40. Ms. O'Shea applied for and was approved for Short Term Disability Benefits effective July 12 ,2021.

41. As of August 2021, Ms. O'Shea's test results demonstrated positive Bartonella WB IgM and TBRF Borrelia Immunoblot IgG.

42. Ms. O'Shea continued to have symptoms of pain, neuropathic symptoms of numbness, dysesthesia, tingling, migraines, fatigue, blurry vision, and dizziness.

43. Ms. O'Shea's symptoms were medically consistent with tick-borne illnesses.

44. Because Ms. O'Shea was not able to return to work, she applied for LTD benefits.

45. By correspondence dated April 15, 2022, Unum denied Ms. O'Shea's claim for LTD benefits.

46. Unum relied upon the medical opinion of Neal Greenstein, MD, who asserted that Ms. O'Shea was not disabled as she had no limitations in her functioning.

47. Dr. Greenstein questioned Ms. O'Shea's diagnosis.

48. Dr. Greenstein provided no medical rationale for his questioning Ms. O'Shea's diagnosis.

**Ms. O'Shea's Appeal of Unum's Denial of Benefits**

49. On or about October 11, 2022, Ms. O'Shea filed an appeal of Unum's April 15, 2022, decision to deny her benefits.

50. On October 31, 2022, Ms. O'Shea supplemented her appeal with medical records and reports from her treating physician, documenting her ongoing functional limitations due to her tick-borne illnesses as well as her POTS diagnosis.

51. On December 8, 2022, Unum sent to Ms. O'Shea the medical peer review report it had conducted on appeal by Anup Sanghvi, MD.

52. Dr Sanghvi holds a medical license in Texas.

53. Dr. Sanghvi is not affiliated with any hospital and his practice address is the same address as a UPS store.

54. Dr. Sanghvi does not hold a medical license in Massachusetts.

55. Dr. Sanghvi's December 7, 2022 report stated in part:

> In the context of the symptom of fatigue, it was documented as present but improved, in some of the notes referenced above. Although the symptom of fatigue was acknowledged, it was also reported that the claimant could shower/get dressed, could make breakfast, and could spend time with the cat and she was able to drive. These reported activities and documented evidence of improvement in her symptoms (including fatigue in some notes) after 9/2021 were not consistent with symptoms of such severity that would preclude continued inability to work at the referenced occupational demands through 1/8/2022.

56. On December 21, 2022, Ms. O'Shea's primary care physician, Daniel J. Barker, MD, wrote a response to Dr. Sanghvi.

57. Dr. Barker's December 21, 2022 correspondence stated in part:

> I reviewed the "Appeals Physician Written Review" in detail by Dr. Anup Sanghavi dated 12/07/2022. I was disappointed, and frankly dismayed that a reviewing physician would take excerpts from my clinical notes out of context in an effort to reach a pre-determined conclusion about Ms. O'Shea's ability to work.
>
> Phrases like "well appearing, no acute distress" are standard in medical documentation, implying that a patient is not acutely ill or in the midst of a medical emergency. This phrasing implies nothing about a patient's ability to work and should not be used for the purpose of making that determination. Similarly, my reference to Ms. O'Shea's "improvement" or "coping more effectively" was relative to her prior clinical condition, and again, was unrelated to any judgement about her ability to work.
>
> As all of us who practice primary care understand, the findings of physical exam, lab testing, and imaging only tell part of the story for any given patient. This was certainly the case with Ms. O'Shea, who experienced symptoms objectively debilitating enough to render her unable to meet her occupational demands from July 2021 through January 2022. I believe the evidence for this is contained plainly within the records that were reviewed by Dr. Sanghavi. It was unfortunate that the "Review" opted not to focus on those elements.
>
> I strongly urge you to re-consider your determination about Ms. O'Shea's ability to meet her occupational demands during the timeframe in question. Thank you for your time and consideration of this matter.

58. In his December 7, 2022 report, Dr. Sanghvi asserted:

> Also for the chronic pain (and adjustment disorder) there was no documentation of a trial and response to other medications used for chronic pain including for example an SNRI such as Duloxetine or tricylcics such as Amitriptyline through the entire review period. The intensity and management of her conditions did not indicate illness of such a severity that it would support functional impairment and prevent the claimant from working within the referenced range of occupational demands.

59. In correspondence dated December 19, 2022, Dr. Levitan responded to Dr. Sangvhi stating in part:

> In functional medicine, we are working to find the root cause of the symptoms occurring. It is not common practice to prescribe a SNRI to mask her symptoms and not get to the bottom of what is going on. SNRI's have common side effects like tiredness, constipation, insomnia, and loss of appetite. These are all side

8

> effects we want to avoid with any patient, as prescribing this kind of medication often causes other problems to the patient. While Aoife has been in my care, we have worked on fixing the root cause of her fatigue, pain, and brain fog- instead of simply masking these symptoms with medications that would likely cause other problems. Simply prescribing an SNRI or other pain medication would not do Ms. O'Shea justice in fixing the cause of her current symptoms, and is considered the easy way
> out when treating difficult cases.

60. On January 5, 2023 counsel for Ms. O'Shea submitted to Unum a response to Dr. Sanghvi's review, including the response letters from Drs. Barker and Levitan.

61. In accordance with ERISA, a reviewing physician must have "appropriate training and experience in the field of medicine involved in the medical judgment." See 29 C.F.R. § 2560.503-1(h)(3)(iii).

62. In its January 5, 2023 correspondence to Unum, counsel inquired of Unum as to Dr. Sanghvi's experience and training in the treatment of Ms. O'Shea's disabling conditions of Lyme Disease and tick-borne illnesses.

63. Unum did not ask Dr. Sanghvi to review Drs. Barker and Levitan's narrative responses dated December 21, 2022 and December 19, 2022 respectively.

64. Unum did not have any other physician review Drs. Barker and Levitan's narrative responses to Dr. Sanghvi's peer review.

65. Unum did not attempt to speak with Ms. O'Shea's treating providers, Drs. Levitan or Barker to discuss Ms. O'Shea's medical conditions.

66. By correspondence dated February 17, 2023, Unum denied Ms. O'Shea's appeal.

67. Unum refused to engage with Ms. O'Shea in the review of her appeal.

**Summary of Defendants' Review of Ms. O'Shea's Claim.**

68. Ms. O'Shea has exhausted her administrative remedies pursuant to 29 C.F.R. § 2560.503-1(1) (2) (i)-(ii).

69. Ms. O'Shea's disability and eligibility for LTD benefits is based on the substantial medical evidence in Defendants' possession.

70. The Defendants and their paper reviewers arbitrarily dismissed Ms. O'Shea's symptoms and functional limitations when they determined that Ms. O'Shea was not disabled.

71. The Defendants failed to have Ms. O'Shea's claim assessed by a medical provider with the appropriate experience and training to evaluate her eligibility for benefits as required by ERISA's implementing regulations.

72. The Defendants did not request that Ms. O'Shea undergo a medical examination with a doctor of its choosing, as permitted by the terms of the Plan.

73. The Defendants failed to evaluate the clinical findings of Ms. O'Shea's treating physicians regarding Ms. O'Shea's symptoms, restrictions, and limitations.

74. The Defendants unreasonably dismissed Ms. O'Shea's symptoms.

75. The Massachusetts Board of Registration in Medicine's regulations, specifically, 243 CMR 2.01, require physicians conducting an in-person or paper review of an individual seeking disability benefits to have a full license to practice medicine in Massachusetts.

76. 243 CMR 2.01 is not preempted by ERISA.

77. 243 CMR 2.01 does not contradict ERISA's implementing regulations.

78. Defendants failed to meet the Plan requirements for review of claims that have been denied.

79. Defendants failed to provide Ms. O'Shea with a full and fair review of her claim for LTD benefits.

80. The Defendants failed to respond to Ms. O'Shea's attempts to engage in a meaningful dialogue regarding the evaluation of her claim.

81. Any discretion which the Defendants may claim they are entitled to under the Plan is negated by their failure to provide Ms. O'Shea with a full and fair review of her appeal.

82. Defendants failed to meet the notice requirements required by ERISA's implementing regulations. Defendants' appeal determination letter failed to articulate the basis for the decisions to deny benefits, failed to contain a full discussion of why Ms. O'Shea's claim was denied, and failed to detail the standards behind the decision.

83. Due to the unlawful denial of benefits under ERISA, Ms. O'Shea has lost her rightful LTD benefits.

84. Due to the unlawful denial of benefits under ERISA, Ms. O'Shea has also lost the use of her LTD benefits.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefit)
### (ALL DEFENDANTS)

85. Ms. O'Shea realleges each of the paragraphs above as if fully set forth herein.

86. The Plan is a contract.

87. Ms. O'Shea has performed all her obligations under the contract.

88. 29 U.S.C. § 1132(a) states that:

    (a) A civil action may be brought ---

    1. by a participant or beneficiary –

        A. for the relief provided for in subsection (c) of this section, or

        B. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

89. The Defendants' actions constitute an unlawful denial of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

90. The Defendants unlawfully denied Ms. O'Shea's benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Ms. O'Shea's claim for LTD benefits; (2) denying Ms. O'Shea a full and fair review of the decision to deny her benefits; and (3) failing to engage with Ms. O'Shea regarding its medical determination that she was not disabled.

91. In accordance with 29 U.S.C. §1132, Ms. O'Shea is entitled to LTD benefits under the Plan based upon her disabled status from July 7, 2021 through the present and continuing until she is no longer disabled.

92. The Defendants have refused to provide Ms. O'Shea with her disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the participants of the Plan.

93. As a direct and proximate result of this breach, Ms. O'Shea has lost the principal and the use of her rightful disability benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

94. Ms. O'Shea realleges each of the paragraphs above as if fully set forth herein.

95. Under the standards applicable to ERISA, Ms. O'Shea deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

96. Defendants have the ability to satisfy the award.

97. Ms. O'Shea's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

98. The Defendants have acted in bad faith in denying Ms. O'Shea's disability benefits under the Plan.

99. The award of attorney's fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Ms. O'Shea is entitled to retroactive and ongoing disability benefits as calculated under the terms of the Plan;

(2) Award Ms. O'Shea disability benefits and 12 % interest from the date of the Defendants' breach of contract;

(3) Order that the Defendants make restitution to Ms. O'Shea in the amount of all losses sustained by Ms. O'Shea as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest;

(4) Award Ms. O'Shea the costs of this action and reasonable attorney's fees; and

(5) Award such other relief as the court deems just and reasonable.


Dated:  November 28, 2023                    Respectfully submitted for the Plaintiff,

                                             By:  _____
                                             M. Katherine Sullivan
                                             BBO No. 649239

LAW OFFICE OF KATHERINE SULLIVAN, LLC
945 Concord Street
Framingham, MA 01701
P: (508) 620-5387
F: (508) 834-1172
E: kate@sullivandisabilitylaw.com